**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 26 2013, 8:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JULIA BLACKWELL GELINAS**
**MAGGIE L. SMITH**
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**TIMOTHY J. ABESKA**
**ALICE J. SPRINGER**
Barnes & Thornburg LLP
South Bernd, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| PARKWAY DEVELOPERS CONSTRUCTION, LLC, <br><br> Appellant-Plaintiff, <br><br> vs. <br><br> LANG, FEENEY & ASSOCIATES, INC., and TERANCE D. LANG, <br><br> Appellees-Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 71A03-1212-PL-526 <br> ) <br> ) <br> ) <br> ) <br> ) |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Michael P. Scopelitis, Judge
Cause No. 71D07-0905-PL-133

**July 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Parkway Developers Construction appeals the trial court's judgment ordering Lang Feeney & Associates to pay Parkway interest on late payments under a contract. Parkway raises three consolidated and restated issues on appeal: 1) whether the trial court erred in determining that a memorandum agreement was enforceable, and in agreeing with Lang on the terms of the agreement; 2) whether the trial court erred in granting summary judgment to Lang on three of the claims in Parkway's complaint; and 3) whether the trial court abused its discretion in denying Parkway's motion to amend its complaint. Concluding that the trial court did not err in interpreting the contract, that the trial court did err in granting summary judgment but that such error was harmless, and that the trial court did not abuse its discretion in denying Parkway's motion to amend, we affirm.

## Facts and Procedural History

In 2005, Parkway hired Lang to do surveying and other work for a subdivision project that Parkway was developing. In 2007, Parkway realized that Lang had made surveying errors and miscalculated the amount of dirt available on the property. Lang acknowledged that errors had been made, and the parties met several times to come to an agreement to remedy the errors. There is some disconnect between the parties and in the record as to who played what role in the drafting of the final agreement. It seems that both parties worked on drafting the contract, and from both the record and the poor draftsmanship of the contract, it appears that lawyers were not involved in its drafting; the record indicates though that Parkway had the advice of an attorney before signing the contract.

2

The Memorandum of Agreement (the "Agreement") was signed on January 16, 2008.

The Agreement states, in relevant part:

> Lang, Feeney & Associates agree to pay Parkway Developers Construction $55,631.00 in Cash, Surveying and related work to be performed under this agreement and existing invoices previously presented to Parkway Developers Construction, all in installments as follows:
> - First installment of $5,000.00 before December 31, 2007;
> - Starting March 31, 2008 payments of $5,000.00 per month. (Interest occurring at 1% per month for late payments.)
> - Dirt to be filled in lots 2, 4, and 5 to make lots uniform for all home models. All expenses for earthwork not to exceed a quantity of 2,075 cubic yards of earth in conjunction with lots 2, 4 and 5, and correcting all surveyors [sic] errors to be paid by Lang, Feeney & Associates.
> - All work and seeding to be done no later than June 2008 (Weather permitting).
> - This Contract also includes first two approvals of the second phase of Country Farm Estates. With all expenses incurred including, but not limited to, any legal or attorney fees to be paid by Lang, Feeney & Associates.
> - It is further agreed that any monies currently due to Lang, Feeney & Associates from Parkway Developers Construction is now applied to satisfaction of this agreement by Lang, Feeney & Associates.
> - Subject to the terms and conditions set forth in paragraph 5 of this Agreement, Parkway . . . does hereby release . . . Lang . . . from any and all claims . . . arising from or relating to the Survey Errors.
>
> ***
>
> - Notwithstanding anything to the contrary in the Agreement, the parties specifically acknowledge that the liability for any claims of Parkway Developers Construction LLC against Lang, Feeney and Associates, Inc arising from the Survey Errors shall only be finally discharged after (a) Parkway Developers Construction LLC has received the total sum, in cash and work equity of Lang, Feeney and Associates, Inc, of $55,631.00 plus any applicable interest, as calculated and designated herinabove [sic].

Appendix at 88-89.

After the Agreement was signed, Lang made payments to Parkway, several of which were late; forgave money that Parkway owed to Lang; and performed certain work under the Agreement, including obtaining the first two approvals of the second phase of Country Farm Estates.

In 2009, Parkway filed suit against Lang, ultimately including four claims: claims one through three were for negligence and breach of contract relating to Lang's initial surveying errors, and claim four was for breach of contract relating to the Agreement. Lang filed for summary judgment, arguing that it had met its obligations under the Agreement and thus was released from any claims relating to the initial surveying errors. The trial court granted summary judgment as to claims one through three, but found that there were material facts in dispute as to claim four, and so claim four proceeded to trial.

In July 2012, Parkway moved to amend its complaint to add a claim for fraud. The trial court denied the motion. In October 2012, a bench trial was held on claim four, and following the trial the parties were instructed to file post-trial briefs. In November 2012, the trial court issued its order and judgment, and sua sponte included findings of fact and conclusions of law. The court found that the Agreement required Lang to provide Parkway with combined cash and services totaling $55,631, plus interest for any late payments. The court found that Lang had paid Parkway $35,000 in cash, had forgiven $8,213 in debt, and had performed services totaling $13,574, for a total of $56,787. The court also found that Lang had not properly seeded or placed dirt as outlined in the Agreement and so was not entitled to any credit for services performed for those items, but that because Lang had

4

otherwise exceeded the monetary requirement of the Agreement, there was no breach of contract. Finally, the court ordered Lang to pay Parkway $247.31 as interest on cash payments that were made late. This appeal followed. Additional facts will be supplied as necessary.

Discussion and Decision

I. Memorandum of Agreement

A. Standard of Review

When, as here, findings of fact and conclusions of law are entered by the trial court, we will not set aside the judgment unless it is clearly erroneous. AmRhein v. Eden, 779 N.E.2d 1197, 1206 (Ind. Ct. App. 2002). Clear error leaves us definitely and firmly convinced the trial court committed error. Id. The evidence must support the findings, and the findings must support the judgment. Id. We defer to the trial court when evidence conflicts, and we will not reweigh the evidence or reassess the credibility of witnesses. Id. We will affirm if there is sufficient evidence of probative value to support the decision, viewing the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. Id. Conclusions of law are reviewed de novo. Id.

B. Release Requirements in Agreement

Parkway does not contest a finding that Lang submitted a combination of cash, services, and forgiven debt that exceeded $55,631. Parkway argues instead that the Agreement required Lang to pay $55,631 in cash, and to perform all of the services outlined in the Agreement, and to forgive Parkway's debt. Parkway further argues that because the

5

parties disagree as to how the dollar amount in the Agreement is to be interpreted, there was no meeting of the minds, and thus the contract is void, and Parkway should be free to pursue its claims against Lang related to the initial surveying errors.

Parkway contends that there was no meeting of the minds because the parties disagree as to whether the Agreement was supposed to cap Lang's costs or whether it was meant to outline several things, all of which Lang was required to complete. However, it is unclear what suggests that there was no meeting of the minds, other than afterthought. While it is true that a meeting of the minds is required for the formation of a contract, the relevant intent "is not the parties' subjective intents but their outward manifestation of it." Zimmerman v. McColley, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005) ("A court does not examine the hidden intentions secreted in the heart of a person; rather it should examine the final expression found in conduct. The intention of the parties to a contract is a factual matter to be determined from all the circumstances." (citation omitted)). The trial court found that the Agreement required Lang to provide Parkway with cash and services totaling $55,631, plus interest for late payments. We agree that the Agreement is not ambiguous on its face: twice it states that the amount due from Lang is to come from a combination of cash and services. The Agreement begins with, "Lang, Feeney & Associates agree to pay Parkway Developers Construction $55,631.00 in Cash, Surveying and related work to be performed under this agreement and existing invoices previously presented to Parkway Developers Construction," and then later reiterates that "Lang, Feeney and Associates, Inc arising from the Survey Errors shall only be finally discharged after (a) Parkway Developers Construction LLC has

6

received the total sum, in cash and work equity of Lang, Feeney and Associates, Inc, of $55,631.00." App. at 88-89 (emphasis supplied). While Parkway testified to a different interpretation than Lang, that does not necessarily mean that there was no meeting of the minds. It was up to the trial court to weigh the evidence and witness credibility, and there was sufficient evidence to support the trial court's finding that the Agreement required Lang to provide cash and services totaling $55,631.

Parkway also argues that Lang breached the Agreement and therefore was not released from liability stemming from the original surveying errors. However, this argument circles back to Parkway's interpretation of the requirements under the Agreement. Parkway does not argue that the trial court wrongly found that Lang supplied cash and services totaling more than $55,631, but continues to argue that the trial court wrongly interpreted the requirements of the Agreement. The record supports the trial court's finding that Lang met that cap within the Agreement. The trial court nevertheless addressed the possibility of a breach by Lang, stemming from Lang's failure to complete all of the services outlined in the Agreement.[1] The court found that, while Lang had failed to complete some of the services, because Lang otherwise met and exceeded the dollar cap as set out in the Agreement, there was no breach for failure to complete additional services. The evidence supports the trial court's findings that Lang did not breach the Agreement.

Concluding that evidence supports the trial court's findings that the Agreement required only that Lang supply cash and services totaling $55,631 and that Lang met that

---

[1] For example, the Agreement included dirt filling and seeding work that the court determined Lang had not completed properly, if at all.

7

obligation and did not breach the Agreement, we also conclude that the trial court's findings support the judgment requiring Lang to only pay $247.31 as interest on late payments.[2]

## II. Summary Judgment

### A. Standard of Review

Our standard of review for a grant of summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In re Bender, 844 N.E.2d 170, 176-77 (Ind. Ct. App. 2006), trans. denied. The moving party bears the burden of designating sufficient evidence to eliminate any genuine factual issues and, once the moving party has fulfilled this requirement, the burden shifts to the nonmoving party to come forth with contrary evidence. Id. at 177. On appeal, we do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. Id. The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. Id. We are not limited to reviewing the trial court's reasons for granting summary judgment as the judgment may be affirmed upon any theory supported by the designated materials. Id.

### B. Parkway's Claims One Through Three

Parkway contends that the trial court erred when it granted Lang's motion for summary judgment on claims one through three of Parkway's complaint. We conclude that

---

[2] Neither party contests the court's calculation of interest owed.

any error in the grant of summary judgment was harmless. The trial court may not pick and choose at the summary judgment stage, and here it is at least possible that there were issues of material fact regarding claims one through three, which related to Lang's initial surveying errors. Because there were issues of material fact relating to Lang's possible breach of the Agreement, if the court had determined that Lang breached the Agreement such that Lang was not released from liability for the surveying errors, then the court may have needed to reach claims one through three. Therefore, summary judgment on claims one through three was in error. However, because of the trial court's resolution of the remaining claim that went to trial (claim four), and our conclusion that the trial court's judgment was proper and Lang—having met the dollar requirement in the Agreement—was released from liability for the original surveying errors, summary judgment as to claims one through three was harmless.

Because of the nature of this case, claims one through three were subsumed into the judgment for claim four. According to the terms of the contract, Parkway bargained in the Agreement for a sum total dollar amount in cash and work, and received that total, and therefore Lang met its part of the contract and was released from suit regarding the initial survey errors. Lang is not liable for the original surveying errors and therefore claims one through three are moot.

### III. Motion to Amend Complaint

The decision whether to grant or deny a motion to amend is within the discretion of the trial court and may be reversed only upon a showing of abuse of discretion. Kelly v. Bennett, 792 N.E.2d 584, 586 (Ind. Ct. App. 2003), trans. denied.

Parkway's original complaint was filed in May 2009. In December 2009, Parkway filed a motion to amend, which was granted. The motion to amend which is at issue here was first filed in April 2012, nearly three years after the initial complaint was filed. Objections and further proposed amendments followed, and in August 2012 the trial court held a hearing on the motion to amend and then denied the motion. Two months later, the bench trial took place.

Parkway's argument does not focus on any abuse of discretion by the trial court, but instead reads as if the court had granted summary judgment on the additional claim. We conclude that the trial court here did not abuse its discretion in denying a motion to amend nearly three years after the initial complaint was filed.

### Conclusion

Concluding that the judgment of the trial court is not clearly erroneous, that any error in granting summary judgment was harmless, and that the trial court did not abuse its discretion in denying a motion to amend the complaint, we affirm.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.